UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

United States of America,

              Plaintiff,              Court File No. 17-cr-293 (1) (ADM/LIB)

v.

                                          **REPORT AND RECOMMENDATION**

Cody Jorrell Loud, Sr.,

              Defendant.

---

This matter is before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of 28 U.S.C. § 636 and Local Rule 72.1, and upon Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure, [Docket No. 27], Defendant's Motion to Suppress Statements, Admissions, and Answers, [Docket No. 28], and Defendant's Motion for Hearing Pursuant to Franks v. Delaware, [Docket No. 29]. The Court held a Motions Hearing on January 8, 2018, regarding the parties' pretrial motions.[1] Subsequently, the Court was informed that the Court's digital recording system had malfunctioned, leaving the Court with no retrievable digital recording of the oral argument and testimony presented at the January 8, 2018, Motions Hearing.

On January 10, 2018, the Court held a telephone status conference during which Defense Counsel and Counsel for the Government agreed that their preferred course of action in light of the lack of a record was to convene a Supplemental Hearing on the Motions in an attempt to recreate the initial January 8, 2018, Motions Hearing. [Docket No. 43]. The Supplemental Motions Hearing was held on February 1, 2018. [Docket No. 48].

---

[1] The Court addressed the parties' pretrial discovery motions by separate order. ([Docket No. 41]).

At the Supplemental Motions Hearing, the parties requested the opportunity to submit supplemental briefing, which was completed on February 27, 2018, after which Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure, [Docket No. 27], Defendant's Motion to Suppress Statements, Admissions, and Answers, [Docket No. 28], and Defendant's Motion for Hearing Pursuant to Franks v. Delaware, [Docket No. 29], were taken under advisement by the undersigned.

For the reasons set forth below, the Court recommends that Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure, [Docket No. 27], be **GRANTED**; Defendant's Motion to Suppress Statements, Admissions, and Answers, [Docket No. 28], be **DENIED**; and Defendant's Motion for Hearing Pursuant to Franks v. Delaware, [Docket No. 29], be **DENIED as moot**.

I.   RELEVANT FACTS

Between February 2015 and July 2016, the Red Lake Department of Public Safety received four anonymous[2] telephone calls regarding alleged drug sales on the Red Lake Reservation. (Govt. Exh. 1, pp. 8-9). Criminal Investigator Paul Smith of the Red Lake Department of Public Safety either personally received these telephone calls or was present while another officer took the calls, and he recorded the information given by the callers. (Tr. 14-15, 18-20, 37-38).[3]

Specifically, on February 7, 2015, one of the anonymous callers stated that Defendant was selling narcotics on the Red Lake Reservation. (Govt. Exh. 1, p. 8). On March 27, 2015,

---

[2] The Government has represented that "no one knows the identities of any of the 'concerned citizens' referred to in the search warrant application." (Order, [Docket No. 42], 7). Moreover, Criminal Investigator Paul Smith testified at the February 1, 2018, Supplemental Motions Hearing that he did not know the identities of the callers. (Tr. 21).

[3] Throughout this Report and Recommendation, the undersigned refers to the Transcript of the February 1, 2018, Supplemental Motions Hearing, [Docket No. 51], by the abbreviation "Tr."

2

another anonymous caller stated that Defendant was selling heroin for $150.00 per gram from a residence at the Redby Trailer Court on the Red Lake Reservation, and a silver and gold Honda Civic was parked in front of the residence. (Id.). On April 18, 2016, an anonymous caller stated that Defendant was selling "meth" from the biggest trailer in the trailer courts in the back of Redby; that individual also stated that the trailer in question was on the east side of the trailer court. (Id. at 8-9). On July 3, 2016, another anonymous caller stated that "parties" were selling "meth" from a blue trailer house near the Redby Elderly apartments behind the trailer courts in Redby and that "numerous people" in Red Lake and Redby were aware of the drug sales. (Id. at 9). And on July 7, 2016, a final anonymous caller stated that Defendant had "just moved his product" from his house to a trailer "that was closest to the Redby Elderly [apartments] in the Redby Trailer Court," and that "product and packaging materials were inside the residence." (Id.).

As a result of the anonymous telephone calls, on July 8, 2016, Criminal Investigator Smith prepared an Application for a Search Warrant for the "Reported Cody Loud Trailer" and an attached Affidavit in Support of the Application. (Govt. Exh. 1, pp. 3-9). The Affidavit contained the information from the anonymous telephone calls, as related above, as well as, Criminal Investigator Smith's professional qualifications. (Id.). c The affidavit described the information as having been received from "concerned citizens," but it did not indicate that the "concerned citizens" were anonymous callers. (Id. at 8-9). Moreover, Criminal Investigator Smith undertook no independent efforts to further investigate or try to corroborate any of the information provided by the anonymous callers. (See, Tr. 24-25).

Criminal Investigator Smith presented the Application and Affidavit in Support to Red Lake Nation Tribal Judge Austin J. Needham, who issued the requested search warrant. (Govt.

Exh. 1, p. 1-2; Tr. 21-22). Thereafter, Criminal Investigator Smith executed the search warrant and conducted a search of Defendant's trailer. (Tr. 22). Ultimately, Defendant was charged by Indictment with one count of possession of heroin with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). [Docket No. 12].

## II. DEFENDANT'S MOTION TO SUPPRESS EVIDENCE OBTAINED AS A RESULT OF SEARCH AND SEIZURE, [Docket No. 27]

Defendant moves the Court for an Order suppressing all evidence obtained through the execution of the tribal search warrant described herein. (Mem. in Supp., [Docket No. 53], 14). Defendant argues that the affidavit in support of the application for the search warrant was insufficient to provide probable cause upon which to issue the warrant. (Id. at 14-27). Defendant first contends that the anonymous informants' uncorroborated tips do not constitute sufficient probable cause to support the issuance of the warrant. (Id. at 14-21). Defendant also argues that the information in the affidavit was stale and failed to establish the requisite nexus between evidence of a crime and the place to be searched. (Id. at 21-27).

### A. Standard of Review

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and that "no warrants shall issue, but on probable cause, supported by Oath or affirmation." U.S. Const. amend. IV.

> "Whether probable cause to issue a search warrant has been established is determined by considering the totality of the circumstances, and resolution of the question by an issuing judge should be paid great deference by reviewing courts."
> . . . .
> "We assess probable cause from the viewpoint of a reasonably prudent police officer acting in the circumstances of the particular case." "A supporting affidavit establishes probable cause to issue a search warrant if it 'sets forth sufficient facts to establish that there is a fair probability that contraband or evidence of criminal activity will be found in the particular place to be searched.'"

> "The determination of whether or not probable cause exists to issue a search warrant is to be based upon a common-sense reading of the entire affidavit."

U.S. v. Davis, 867 F.3d 1021, 1027 (8th Cir. 2017) (citations omitted). Accordingly, Courts should not utilize "hypertechnical" approach when reviewing an affidavit submitted in support of a search warrant. See, U.S. v. O'Dell, 766 F.3d 870, 873-74 (8th Cir. 2014).

> "When the [issuing judge] relied solely upon the supporting affidavit to issue the search warrant, only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." "The core question in assessing probable cause based upon information supplied by an informant is whether the information is reliable." "Information may be sufficiently reliable to support a probable cause finding if the person supplying the information has a track record of supplying reliable information, or if it is corroborated by independent evidence."

Id. at 874 (citations omitted).

### B. Analysis

#### i. Probable Cause

Defendant contends that the search warrant was issued absent a sufficient showing of probable cause. (Mem. in Supp., [Docket No. 53], 13). The affidavit in support of the search warrant now at issue, in addition to Criminal Investigator Smith's credentials and qualifications, stated only:

> 4.  On the 8th of July 2016, as criminal investigator for the Red Lake Department of Public Safety, I Paul Thomas Smith was on duty. On this matter, the issue of narcotics sales taking place on the Red Lake Reservation by an individual identified as Cody Loud was reviewed. The matter concerns Mr. Loud and narcotics activities taking place from 2015 till just prior to the date of this review.
> On the 7th of February 2015, law enforcement was contacted by a concerned citizen on the matter of narcotics sales taking place on the Red Lake Reservation. It was advised that an individual was selling narcotics. It was advised that the individual selling the narcotics was identified as Cody Loud.
> On the 27th of March 2015, law enforcement received information from a concerned citizen on the matter of narcotics sales taking place on the Red Lake Reservation. It was advised that an individual was selling narcotics. It was advised that the individual selling narcotics was identified as Cody Loud. It was advised that Mr. Loud was selling narcotics from a residence in the Redby Trailer

5

>   Courts and that there was a gold and silver colored Honda Civic out front. It was advised that the he was selling heroin for $150.00 a gram.
>   On the 18th of April 2016, law enforcement received a narcotics complaint on the matter of an individual selling narcotics on the Red Lake Reservation. The caller advised that the person selling narcotics in "back of Redby" was identified as Cody Loud. The caller advised that the trailer was the biggest trailer in the trailer courts and that the trailer was on the East side of the trailer courts. The narcotics advised that Mr. Loud were selling were reported as being "meth." See ICR#16005047.
>   On the 3rd of July 2016, law enforcement received information from a concerned citizen on the matter of narcotics sales taking place on the Red Lake Reservation. It was advised that parties were selling narcotics from the blue trailer house near the Redby Elderly apartments in the back of town trailer courts in Redby. It was also advised that they were building a make shift fence in front of the trailer house. It was advised that they were selling "meth" and that numerous people from the Red Lake and Redby communities were aware of the described information.
>   On the 7th of July 2016, law enforcement received information from a concerned citizen on the matter of narcotics sales taking place on the Red Lake Reservation. It was advised that Cody Loud had just moved his product from his house to a trailer house that was closest to the Redby Elderly in the Redby Trailer Court, and that product and packaging materials were inside the residence.
>   Due to the nature and amount of information, I am forwarding this matter to the Red Lake Courts for review.

(Govt. Exh. 1, p. 8-9) (errors in original).

Defendant argues that this affidavit submitted in support of the search warrant now at issue does not establish probable cause to issue the warrant because it relies solely on anonymous and uncorroborated tips to law enforcement. (Mem. in Supp., [Docket No. 53], 14-21). In response, the Government asserts only generally that probable cause exists to support the issuance of the warrant because "[t]here were multiple calls from the community about drug dealing by the defendant out of his trailer," those calls occurred "over an extended period of time," and the calls were "consistent over time." (Mem. in Opp., [Docket No. 56], 8).

It is clear from the face of the affidavit submitted in support of the search warrant now at issue that the sole basis for the search warrant was the anonymous information received by law enforcement. Indeed, the Government does not offer any argument to the contrary. None of the

6

callers were ever identified; Criminal Investigator Smith testified at the February 27, 2018, Supplemental Motions Hearing that he did not know the callers' identities, and the Government has conceded that the callers' identities are unknown. (Tr. 21; see, also, Order, [Docket No. 42], 7).

"[A]n anonymous tip is 'insufficient in itself to support a finding of probable cause.'" U.S. v. Lindsey, No. 10-cr-15 (JNE/JJK), 2010 WL 4822939, *32 (D. Minn. July 20, 2010) (quoting U.S. v. Wells, 223 F.3d 835, 839 (8th Cir. 2000)).

However, "[w]hen information supplied by an informant forms the basis for probable cause in a warrant, the 'core question in assessing probable cause . . . is whether the information is reliable.' Informants without a track record of proving reliable information may be deemed reliable if their information is independently corroborated by other evidence." U.S. v. Neiman, 520 F.3d 834, 839-40 (8th Cir. 2008).

Thus, anonymous tips may not always be insufficient to support probable cause to issue a search warrant; where even some of the information provided by an anonymous source is corroborated by law enforcement, the anonymous tipster may be deemed sufficiently reliable that his or her information supports probable cause to issue a search warrant. See, U.S. v. Keys, 721 F.3d 512, 518 (8th Cir. 2013) "'If information from an informant is shown to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable and that therefore other information that the informant provides, though uncorroborated, is also reliable.'" (citation omitted)); U.S. v. Adkins, No. 15-cr-05 (DWF/LIB), 2015 WL 3463377, *2 (D. Minn. June 1, 2015) (declining to overrule conclusion that an "anonymous tipster was sufficiently reliable" where that information was corroborated by law enforcement "and was

reasonably considered to involve an ongoing offense in light of the location, persons, timing, and the totality of the [relevant] facts").

Moreover, the Eighth Circuit has clearly instructed: "Although an informant's veracity, reliability and basis of knowledge are all highly relevant" in determining whether probable cause exists when an affidavit is based on hearsay information, they are not 'entirely separate and independent requirements to be rigidly exacted in every case.'" U.S. v. Stevens, 530 F.3d 714, 718 (8th Cir. 2008) (citations omitted).

In the case presently before the Court, there is nothing in the affidavit submitted in support of the search warrant which indicates that law enforcement ever even attempted to corroborate, much less actually corroborated, any of the information received from the anonymous callers. There is no indication in the affidavit as to whether any of the information related by the anonymous callers was from the callers' firsthand experience, which could also lend reliability to the anonymous callers' statements. See, Stevens, 530 F.3d at 718-19 (noting that firsthand information entitles a tip to greater weight than might otherwise be given). The affidavit submitted in support of the search warrant simply contains no information nor even any assertions regarding the anonymous informants' veracity, reliability, or basis of knowledge, other than the general July 3, 2016, statement by one of the anonymous callers that "numerous people from the Red Lake and Redby communities were aware of the described information." (See, Govt. Exh. 1, pp. 8-9).

The United States Supreme Court held in Illinois v. Gates that merely "[a]n officer's statement that 'affiants have received reliable information from a credible person and believe' that heroin is stored in a home, is . . . inadequate" to establish the existence of probable cause sufficient to support the issuance of a search warrant. 462 U.S. 213, 239 (1983). In the case

8

presently before this Court, the affidavit in support of the search warrant contains even less than the affidavit at issue in Gates—it does not even generically assert the credibility of the anonymous informants. In light of the long-established and well-settled jurisprudence requiring more than mere uncorroborated information by an anonymous informant to establish probable cause to search an individual's home, even considering the totality of the circumstances and giving great deference to the determination of probable cause by the issuing judge, the affidavit submitted in this case in support of the search warrant now at issue does not establish probable cause to issue the warrant to search Defendant's home.[4]

### ii. Good-Faith Exception

The Government argues that even if probable cause to issue the search warrant for Defendant's home did not exist, the evidence discovered therefrom should not be suppressed because law enforcement executed the search warrant in good faith. (Mem. in Opp., [Docket No. 56], 8-10). Defendant disagrees. (Mem. in Supp., [Docket No. 53], 33-41).

"'A violation of the Fourth Amendment usually triggers exclusion of evidence obtained by way of the violation from a subsequent criminal prosecution.' 'Because exclusion is a prophylactic remedy, however, there are some instances where a Fourth Amendment violation does not trigger the exclusionary rule.'" U.S. v. Rodriguez, 834 F.3d 937, 941 (8th Cir. 2016). One such instance was recognized in United States v. Leon, 468 U.S. 897 (1984), and exists "'when an officer acting with objective good faith has obtained a search warrant from a judge or

---

[4] Defendant also argues that the information in the affidavit in support of the search warrant now at issue was insufficient because it supplied only stale information, (Mem. in Supp., [Docket No. 53], 21-23), and because it failed to demonstrate the required nexus between evidence of a crime and the place to be searched, (Id. at 23-27). The Government again only summarily argues the opposite. (Mem. in Opp., [Docket No. 56], 8). However, because the affidavit in support of the search warrant now at issue fails to establish probable cause for the reasons already set forth above—that it was based solely on uncorroborated information provided by unknown, anonymous informants—the Court need not address these additional arguments.

magistrate and acted within its scope," even if the warrant is subsequently invalidated." See, Rodriguez, 834 F.3d at 941 (quoting Leon, 468 U.S. at 920).

However, the good-faith exception does not apply if:

(1) the affiant mislead the issuing judge with a knowing or reckless false statement; (2) the issuing judge wholly abandoned [his or] her judicial role; (3) the supporting affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) the warrant was "so facially deficient" that the executing officer could not reasonably presume its validity.

U.S. v. Notman, 831 F.3d 1084, 1089 (8th Cir. 2016) (quoting Leon, 468 U.S. at 923).

"'In assessing whether the officer relied in good faith on the validity of a warrant, [the Court] consider[s] the totality of the circumstances, including any information known to the officer but not included in the affidavit.'" U.S. v. Johnson, 848 F.3d 872, 879 (8th Cir. 2017) (citations omitted). The Court's "inquiry is confined to 'the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" U.S. v. Hopkins, 824 F.3d 726, 733 (8th Cir. 2016) (quoting Leon, 468 U.S. at 922 n.23).

The Government's contention in the present case that "the supporting affidavit was not so lacking in probable cause or so deficient as to warrant an executing officer to question its validity," (Mem. in Opp., [Docket No. 56], 9), is on the present record unpersuasive. "An officer may not rely entirely on the [issuing judge's] finding of probable cause when the application for the warrant so lacks probable cause that the officer cannot have a reasonable belief in its existence." U.S. v. Farlee, 757 F.3d 810, 819 (8th Cir. 2014) (citing Malley v. Briggs, 475 U.S. 335, 344-45 (1986)). As already set forth above, the well-established and long-settled jurisprudence on probable cause clearly holds that uncorroborated information from anonymous tipsters cannot by itself establish probable cause to issue a search warrant. See, e.g., Gates, 462

10

U.S. at 239; Aguilar v. Texas, 378 U.S. 108, 109-16 (1964), abrogated on other grounds by Gates, 462 U.S. at 225-39; Lindsey, 2010 WL 4822939, at *32.

According to the affidavit submitted in support of the search warrant now at issue, at the time Criminal Investigator Smith drafted the affidavit, he had "been employed as a sworn police officer" for over 10 years. (Govt. Exh. 1, pp. 2, 8). It is objectively unreasonable for an officer with over 10 years of experience to present a search warrant affidavit to a judge when that affidavit contains only uncorroborated information obtained from anonymous callers. See, U.S. v. Nelson, No. 4-cr-4651 (DWF/JSM), 2005 WL 1355025, *3 (D. Minn. June 2, 2005) (finding it "objectively unreasonable for an officer with 34 years of experience to present a search warrant affidavit to a judge with only conclusory assertions").[5]

Moreover, Criminal Investigator Smith drafted and submitted the affidavit in support of the warrant to search Defendant's home that is now at issue, and Criminal Investigator Smith testified at the Supplemental Motions Hearing that he supervised the execution of the search warrant after it was issued. (Tr. 15). The fact that Criminal Investigator Smith was involved in both the deficient application for and the subsequent execution of the search warrant now at issue is significant, as it invalidates any argument that the executing officers were unaware of the patent insufficiencies of the affidavit supporting the search warrant. See, Nelson, 2005 WL 1355025, at *3; see, also, Herring v. United States, 555 U.S. 135, 139-47 (2009) (finding that where officers executing the warrant were in no way culpable for the error rendering the warrant invalid, exclusion of subsequently discovered evidence was not required). In any event, even if Criminal Investigator Smith had not directly participated in the execution of the search warrant

---

[5] The affidavit submitted in the support of the search warrant on its face fails to inform the Tribal Judge that all the information contained therein was received from anonymous callers, nor does the affidavit inform the Tribal Judge that none of the information provided by the anonymous callers was corroborated in any way. (Govt. Exh. 1, pp. 8-9). Moreover, Criminal Investigator Smith was aware of the omissions and did not inform the Tribal Judge of the same when the application for a search warrant was presented by Criminal Investigator Smith. (Tr. 41).

11

for Defendant's home, the United States Supreme Court has consistently held that "an officer [may] not 'obtain a warrant on the basis of a "bare bones" affidavit and then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search.'" Herring, 555 U.S. at 146 (quoting Leon, 468 U.S. at 923 n. 24).

Although this Court's review of the issuing Tribal Judge's probable cause determination is restricted to the four corners of the affidavit, "when assessing the officer's good faith reliance on a search warrant under the Leon good faith exception, we can look outside of the four corners of the affidavit and consider the totality of the circumstances, including what the officer knew but did not include in the affidavit." Farlee, 757 F.3d at 819. In the present case, however, even looking outside the four corners of the affidavit does not justify application of the good-faith exception to the exclusionary rule. At the February 1, 2018, Supplemental Motions Hearing, Criminal Investigator Smith testified that the incident report related to the April 18, 2016, anonymous call states that the anonymous caller indicated that he was relaying "secondhand" information he had heard from other individuals. (Tr. 33-34). This information was not included in the affidavit supporting the warrant application. (Govt. Exh. 1, pp. 8-9). In addition, at the initial January 8, 2018, Motion Hearing, Criminal Investigator Smith also testified that any investigation he had undertaken of Defendant would have been included in his affidavit in support of the search warrant.[6] Since no such investigation was reflected in the affidavit

---

[6] Despite the lack of case law directly on point, the Court's own independent research shows that when the record of an evidentiary hearing is unavailable, the Court may rely upon its own recollection of the hearing. See, Grant v. Broad River Correctional Institution, No. 4:150cv02728-PMD-TER, 2016 WL 1445206, *5-6 (D. S.C. March 11, 2016) (finding no error where trial court at reconstruction hearing relied upon its own recollection of the waiver hearing which was being reconstructed); U.S. v. Collins, No. 09-MJ-0009-C, 2009 WL 1758819, *2 n.5 (S.D. Ala. June 22, 2009) ("During the trial of this case, the recording equipment malfunctioned and, therefore, not all testimony was transcribed. Accordingly, the Court has relied on its notes and memory of the testimony which was not transcribed, aided by the recollections of the attorneys involved."). In the absence of any legal authority prohibiting the Court from so relying upon its own recollections and notes from the initial January 8, 2018, Motions Hearing, the Court does so here.

submitted in support of the search warrant now at issue, it is reasonable to conclude that no such investigation ever occurred.

"Leon teaches us that the suppression of evidence occurs only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." Nelson, 2005 WL 1355025, *4. "[T]he exclusionary rule is designed to deter police misconduct," and "an officer [cannot] manifest objective good faith in relying on a warrant based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" Leon, 468 U.S. at 916, 923 (citations omitted). In the case presently before the Court, Criminal Investigator Smith had over 10 years of experience in law enforcement, he prepared the affidavit submitted in support of the application for a search warrant, and he executed the resulting search warrant. It was objectively unreasonable for Criminal Investigator Smith to believe that the affidavit, which contained only uncorroborated information received from entirely anonymous sources, established probable cause sufficient to justify the issuance of a warrant to search Defendant's home.

For these reasons, the Leon good-faith exception does not operate to preserve the admissibility of the evidence obtained by the search of Defendant's home. As the Court noted in Nelson: "[t]o conclude otherwise would sanction the preparation and use of such deficient affidavits." 2005 WL 1355025, at *4.

Accordingly, the undersigned recommends that Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure, [Docket No. 27], be **GRANTED**.

### III. DEFENDANT'S MOTION TO SUPPRESS STATEMENTS, ADMISSIONS, AND ANSWERS, [Docket No. 28]

In his initial written Motion to Suppress Statements, Admissions, and Answers, [Docket No. 28], Defendant sought an Order suppressing statements he allegedly made to law

enforcement on July 8, 2016, and October 23, 2017. At the February 1, 2018, Supplemental Motions Hearing, however, the parties informed the Court that the Government will not offer the July 8, 2016, statements into evidence in its case-in-chief. (Tr. 7-8).

Accordingly, the October 23, 2017, statements are the only statements that remain at issue in the present Motion. (See, Tr. 8; see, also, Mem. in Supp., [Docket No. 53], 41). Moreover, in reliance upon the Government's statement at the Supplemental Motions Hearing that it does not dispute Defendant's standing to challenge the search warrant discussed above, Defendant has withdrawn his arguments that the October 23, 2017, statements should be suppressed based upon the alleged violation of his rights under the Sixth Amendment to the United States Constitution and the alleged violation of his rights under Miranda v. Arizona, 384 U.S. 436 (1966). (Tr. 8-11). Therefore, the only issue remaining before the Court is whether the October 23, 2017, statements by Defendant to law enforcement should be suppressed based upon their status as "fruit of the poisonous tree," or evidence obtained through police illegality. (Tr. 8-11; see, also, Mem. in Supp., [Docket No. 53], 41). See, U.S. v. Simpson, 439 F.3d 490, 493-94 (8th Cir. 2006) (citations omitted) ("Under the 'fruit of the poisonous tree' doctrine, the exclusionary rule bars the admission of physical evidence and live witness testimony obtained directly or indirectly through the exploitation of police illegality.").

At the initial January 8, 2018, Motions Hearing, the Government presented the testimony of Special Agent Travis Putrah, who testified that on October 23, 2017, he arrested Defendant at the Red Lake Tribal Law Enforcement jail and transported him to Beltrami County District Court and then to the Clearwater County jail. Special Agent Putrah further testified that during this transportation, Defendant stated that he owned the trailer at which the search warrant was executed, that he had been renting the trailer to another individual, and that he had evicted that

14

individual just prior to the execution of the search warrant at the trailer.[7] At the February 8, 2018, Supplemental Motions Hearing, however, the Government and Defendant agreed that it was unnecessary to recall Special Agent Putrah to testify because Defendant's only remaining argument was that the October 23, 2017, statements should be suppressed as fruit of the poisonous tree. (Tr. 6-7).

### A. Standards of Review

"Verbal statements obtained as a result of a Fourth Amendment violation are as much subject to the exclusionary rule as are items of physical evidence discovered during an illegal search." U.S. v. Yousif, 308 F.3d 820, 832 (8th Cir. 2002) (citing Wong Sun, 371 U.S. 471, 485 (1963)). "'[T]he defendant bears the initial burden of establishing the factual nexus between the constitutional violation and the challenged evidence.'" U.S. v. Goodale, 738 F.3d 917, 922 (8th Cir. 2013) (quoting U.S. v. Riesselman, 646 F.3d 1072, 1079 (8th Cir. 2011)). In addition, "[t]he evidence should only be excluded if the 'illegality is at least a but-for cause of obtaining the evidence.'" Riesselman, 646 F.3d at 1079 (quoting U.S. v. Olivera-Mendez, 484 F.3d 505, 511 (8th Cir. 2007). "Once the defendant comes forward with specific evidence demonstrating taint, the ultimate burden of persuasion to show the evidence is untainted lies with the government." Riesselman, 646 F.3d at 1079 (citing Alderman v. U.S., 394 U.S. 165, 183 (1969)).

### B. Analysis

The entirety of the argument Defendant devotes to suppressing the October 23, 2017, statements as fruit of the poisonous tree is as follows:

> The October 23, 2017[,] statements, admissions, or answers made by Mr. Loud were the fruit of his preceding unlawful seizure, search, and arrest on July 8,

---

[7] This summary of Special Agent Putrah's testimony at the initial January 8, 2018, Motions Hearing is based upon Defendant's representations in his Memorandum in Support of the Motions presently before the Court, ([Docket No. 53], 11); the Governments representations in response, ([Docket No. 56], 10-11); and the Court's own recollections and notes from the initial January 8, 2018, Motions Hearing. See, fn. 6, supra.

15

> 2016, as has been shown above. Those statements therefore may not be admitted at trial because they were obtained in violation of his rights under the Fourth and Fifth Amendments to the Constitution of the United States. See, United States v. Rembert, 838 F. Supp. 1336, 1341 (8th Cir. 1993) (holding that, "[i]n order for a statement given to police after an unlawful seizure to be admissible at trial, the statement must not only be voluntary by Fifth Amendment standards, but it must also not be the result of exploiting the illegal seizure" and that, instead, "it must be 'an act of free will [sufficient] to purge the primary taint" (quoting [Wong Sun, 371 U.S. at 484-88, Brown v. Illinois, 422 U.S. 590, 602 (1975))).

(Motion, [Docket No. 28], 2; Mem. in Supp., [Docket No. 53], 41). In response, the Government argues that the October 23, 2017, statements were voluntary, they were not the product of custodial interrogation, and they were attenuated by the passage of over 1 year since the search of Defendant's trailer. (Mem. in Opp., [Docket No. 56], 11-12). Further, the Government argues that at the time of the October 23, 2017, statements, Defendant was not in custody due to an illegal arrest. (Id. at 11).

Initially, the Court notes that Defendant has set forth in his Memorandum no additional details regarding his arrest, nor does he sufficiently establish for the Court that the October 23, 2017, statements were "the fruit" of the unlawful search of his trailer on July 8, 2016. A relatively recent decision from this Court is instructive. In U.S. v. Rios-Uscanga, United States Magistrate Judge Katherine Menendez "conclude[d] that the affidavit upon which the initial search warrant was based did not establish probable cause to search the home. Moreover, its legal inadequacy [was] so apparent that the good-faith exception does not overcome the exclusionary rule." No. 16-cr-316 (RHK/KMM), 2017 WL 1534746, *1 (D. Minn. March 13, 2017), report and recommendation adopted at 2017 WL 1534745 (D. Minn. Aug. 26, 2017). Accordingly, the physical evidence seized by way of the search of the home was suppressed. Id.

However, when Magistrate Judge Menendez turned to the defendant's argument that statements he made subsequent to the search should be suppressed as fruit of the poisonous tree, she recommended that the Court not suppress the statements for two reasons:

> First, Mr. Rios-Uscanga fails to sufficiently establish that the statements are indeed fruit of the unlawful search of the . . . residence. There is no detail in either Mr. Rios-Uscanga's motion or his post-hearing briefing about the timing of the statements, the setting in which they were obtained, or the general factual landscape surrounding them. Second, and relatedly, there is no authority cited in Mr. Rios-Uscanga's brief that supports the proposition that a statement can be suppressed as fruit of an unlawful *search* rather than as fruit of an unlawful seizure. And there is no suggestion that the arrest of Mr. Rios-Uscanga was unlawful. For both of these reasons, Mr. Rios-Uscanga has failed to meet his burden of demonstrating the statements are fruit of the unlawful search of the . . . residence and [they] should not be suppressed on that basis.

Id. at *7.

Unlike the defendant in Rios-Uscanga, Defendant in the case presently before the Court cites to United States v. Rembert, 838 F. Supp. 1336 (D. Minn. 1993), a case in which this Court addressed—and rejected on its merits—the argument that certain statements should be suppressed as fruits of a prior illegal search. In Rembert, the Court found that "the primary taint of the invalid search was purged by intervening circumstances," namely: the 6-month time period between the illegal search and the defendant's subsequent arrest and statements; during that time, the defendant was released and was free from custody. Id. at 1341. Accordingly, the defendant's statements in Rembert "were not fruits of the illegal search" and were not suppressed for that reason. Id.

However, even in light of this legal authority which at least entertains the possibility that a statement can be suppressed as the result of an illegal search, Defendant has failed to set forth any facts or argument that sufficiently connect the illegal search in the case presently before the Court with the statements Defendant made over 1 year later. Defendant makes no substantive

17

argument that his statements on October 23, 2017, were the result of the exploitation of the illegality underlying the July 8, 2016, search of his trailer. Moreover, Defendant has made no argument that his arrest just prior to the statements now at issue was illegal. Because Defendant has failed to establish the requisite factual nexus between the illegal search of July 8, 2016, and the statements he made on October 23, 2017, he has failed to meet his initial burden on this issue.

Accordingly, the undersigned recommends that Defendant's Motion to Suppress Statements, Admissions, and Answers, [Docket No. 28], be **DENIED**.

### IV. DEFENDANT'S MOTION FOR HEARING PURSUANT TO FRANKS V. DELAWARE, [Docket No. 29]

Defendant seeks a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978). (Mem. in Supp., [Docket No. 53], 27-33). In Franks v. Delaware, 438 U.S. 154, 155-56 (1978), the United States Supreme Court stated:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

In other words, "[a] defendant may obtain a Franks hearing if (1) he makes a 'substantial preliminary showing' that the affiant intentionally or recklessly included a false statement in the warrant affidavit, and (2) the false statement was 'necessary to the finding of probable cause.'" U.S. v. Shockley, 816 F.3d 1058, 1061 (2016) (citations omitted). The Eighth Circuit "has extended Franks to allow challenges to affidavits based on deliberate or reckless omissions." U.S. v. Gater, 868 F.3d 657, 659 (8th Cir. 2017).

In the case presently before the Court, Defendant contends that Criminal Investigator Smith materially omitted from the affidavit in support of the search warrant now at issue that

18

neither he nor any other law enforcement officer knew the identities of the anonymous tipsters and that at least the April 18, 2016, anonymous caller was relaying "secondhand" information. (Mem. in Supp., [Docket No. 53], 28-33). The Government generically responds that these are not material omissions which were critical to the finding of probable cause, as is required to necessitate a Franks hearing. (Mem. in Opp., [Docket No. 56], 3-4).

Because the affidavit submitted in support of the search warrant now at issue in the present case clearly failed on its face to set forth sufficient information to support a finding of probable case, as already set forth above, the Court need not address the Franks argument. See, U.S. v. Sager, 743 F.2d 1261, 1266 (8th Cir. 1984) ("We did not reach the Franks point in our prior opinion, since our conclusion that the affidavit, even assuming that it was completely true, did not establish probable cause made it unnecessary to face the issue."); see, also, U.S. v. Race, No. 11-CR-6157G, 2015 WL 576171, *24 n. 22 (W.D. N.Y. Feb. 11, 2015) ("Having concluded that the evidence should be suppressed, I need not reach defendants' alternative argument that the warrant was invalid under Franks because it contained material omissions and false or misleading information.").

Accordingly, the undersigned recommends that Defendant's Motion for Hearing Pursuant to Franks v. Delaware, [Docket No. 29], be **DENIED AS MOOT**.

### III. CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure, [Docket No. 27], be **GRANTED**;

2. Defendant's Motion to Suppress Statements, Admissions and Answers, [Docket No. 28], be **DENIED**; and

3. Defendant's Motion for Hearing Pursuant to Franks v. Delaware, [Docket No. 29], be **DENIED as moot**.

Dated: March 21, 2018                                   s/Leo I. Brisbois
                                                        The Honorable Leo I. Brisbois
                                                        United States Magistrate Judge

# N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]"  A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.